NOT FOR FULL-TEXT PUBLICATION
File Name: 10a0098n.06

No. 08-5827

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Feb 16, 2010**
LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,

        Plaintiff-Appellee,

v.

MICHAEL BRYAN POWERS,

        Defendant-Appellant.

_____/

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE WESTERN
DISTRICT OF TENNESSEE

BEFORE:  SUHRHEINRICH, McKEAGUE, and KETHLEDGE; Circuit Judges.

        **SUHRHEINRICH, Circuit Judge**.  Michael Powers appeals his judgment and convictions on two counts of possession of child pornographic images in violation of 18 U.S.C. § 2252(a)(4)(B). Powers claims that the district court (1) lacked federal jurisdiction as to Count II of the indictment; (2) unconstitutionally limited his right to confront his accusers by not allowing him to question a key witness about her marijuana use; and (3) improperly denied his proposed jury instruction on venue. For the reasons that follow, we **AFFIRM** the judgment of the district court.

**I.  BACKGROUND**

**A.**    **Factual and Procedural Background**

        This case began when the Federal Bureau of Investigation ("FBI") received a tip from Yahoo, Inc. ("Yahoo"), headquartered in Sunnyvale, California, about a Yahoo group account named "luvbeauty03" that contained child pornographic images. This account was created on July 24, 2006, by an individual using the screen name LuvBeauty03@yahoo.com. By tracing the IP address, it was

determined that the account was created on a computer located at 1236 Madison Avenue, Apartment 6, Memphis, Tennessee. The account was accessed an additional four times, from the same IP address, between July 24th and July 25th, 2006. The Elwood family lived in this apartment, which at the time consisted of Scott and Teresa Elwood, husband and wife, a 15 year-old daughter, and a 9 year-old son.

The FBI executed a search warrant of the Elwood residence in March 2007 in response to this information. Upon speaking with Ms. Elwood, the FBI learned that Powers had lived with the Elwoods between July and August 2006. Powers was a longtime friend of Mr. Elwood. There were three computers in the home during this time period, two of which were connected to the internet. One in the master bedroom was used by Mr. Elwood for work, and another rented computer was kept in the foyer and used by everyone in the home. By the time the FBI searched the home, the computer in the foyer had been returned to the rental company. The third computer was broken during the time that Powers lived there, and Mr. Elwood gave Powers this computer when Powers moved out. Powers never had a job while he lived at the Elwoods', and he spent a lot of time on the computer in the foyer.

At this point Powers became a person of interest in the investigation. Powers met with FBI agents on March 22, 2007. He admitted to the FBI that "luvbeauty03" was his Yahoo account, that he had created the Yahoo group "luvbeauty03," and that he was the only person with a password. He informed the agents that he did not create the group to distribute child pornography, but only to use it for his own personal use. He further told the agents of other online account names that he used, including the name "ST1.Cold." Powers also stated that Mr. Elwood had an interest in child pornography and that they had viewed child pornography together. Powers gave the agents the

2

computer that Mr. Elwood had given him. Powers had subsequently repaired the computer, but it had broken again before he gave it to the agents. He told the agents that they could search his residence, but that they would not find any child pornographic images because he had thrown his looseleaf folder filled with child pornographic images into a river a couple days before—after learning from Mr. Elwood that the FBI wanted to speak with him about child pornography.

Powers was indicted on two counts of possession of child pornography. Count I related to Powers' knowing possession, between May and August 2006, of a Yahoo group account that contained approximately 66 child pornographic images. Count II related to Powers' knowing possession, between September 2006 and March 22, 2007, of a computer that contained child pornographic images.

The evidence at trial overwhelmingly linked Powers to the child pornography listed in both counts of the indictment. An FBI agent testified about Powers' confession, and Mr. Elwood testified that he viewed child pornography with Powers, sometimes while they engaged in oral sex. Mr. Elwood further testified that to help him access child pornography, Powers provided him with the password to an e-mail account on AOL. He was familiar with the name "luvbeauty03" because he had seen the name in Powers' AOL account. Ms. Elwood also testified about Powers' frequent use of the computer during his stay at the Elwoods'. Moreover, a computer forensics examiner testified about his recovery of child pornographic images from the hard drive of the computer Powers gave to the police, and these recovered images were entered into evidence. The computer forensics examiner found child pornographic images stored in the free space on the hard drive, and the metadata in the computer indicated that the images had previously been stored in more accessible locations on the computer under the name ST1.Cold. One of the images listed in the indictment was

3

modified on January 25, 2007. Furthermore, the images from the Yahoo account were entered into evidence, as well as records and testimony that established that the account was created and used from the Elwoods' residence.

After the jury found Powers guilty on both counts, he was sentenced to 130 months in prison on each count, running concurrently, followed by five years of supervised release. He appeals.

## II. ANALYSIS

### A. Federal Jurisdiction

Powers argues that the Government has failed to establish federal jurisdiction for the conduct described in Count II of the indictment—related to his knowing possession of a computer that contained child pornographic images. This court reviews questions of jurisdiction de novo. *United States v. Brown*, 276 F.3d 211, 214 (6th Cir. 2002) (citing *United States v. Nash*, 175 F.3d 440, 442 (6th Cir. 1999)). Powers maintains that 18 U.S.C. § 2252(a)(4)(B) is unconstitutional as applied because the Government failed to establish that the conduct in Count II had any nexus with interstate commerce.[1] Under § 2252(a)(4)(B), "federal jurisdiction is established by showing that the image traveled in interstate or foreign commerce or that it was produced by materials that have traveled in interstate commerce." At trial, the Government established that the hard drive on which the images were found was produced in Singapore. The Government offered no other direct or circumstantial evidence related to Count II that would satisfy the jurisdictional requirement. Powers alleges that this connection is not enough to establish the needed nexus with interstate commerce.

This court considers as-applied challenges to federal child pornography statutes with the

---

[1] Powers does not contend that the statute is unconstitutional on its face; an argument that this court has consistently rejected. *See, e.g., United States v. Halter*, 259 F. App'x 738, 742 (6th Cir. 2008) (citing *United States v. Corp*, 236 F.3d 325, 332 (6th Cir. 2001)).

4

federal jurisdiction test employed by the Supreme Court in *Gonzalez v. Raich*, 545 U.S. 1 (2005). *See, e.g., United States v. Gann*, 160 F. App'x 466, 473 (6th Cir. 2005); *United States v. Chambers*, 441 F.3d 438, 454-55 (6th Cir. 2006). In *Raich*, the Supreme Court upheld the federal government's regulation of homegrown medicinal marijauna not intended for distribution. *Raich*, 545 U.S. 1. The Court reasoned that precedent "firmly establishe[d] Congress' power to regulate purely local activities that are part of an economic 'class of activities' that have a substantial effect on interstate commerce." *Id.* at 17. It found production, distribution, and consumption of commodities to be quintessentially economic activities. *Id.* at 25-26. It further remarked that the *de minimis* character of individual instances of economic activities was inconsequential, so long as Congress had a rational basis for viewing the economic activity, taken in the aggregate, as substantially affecting interstate commerce. *Id.* at 17, 22.

This court has noted that, like with federal marijuana statutes, the federal child pornography statutes are constitutional as applied when they are a part of a comprehensive regulation designed to govern the interstate market of a fungible commodity and Congress rationally believed that the commodity could feed a national market and stimulate demand. *Gann*, 160 F. App'x at 473 (finding § 2251(a) to be constitutional as applied). Accordingly, "[w]hether this general regulation of child pornography encompasses some purely intrastate activity is of 'no moment.'" *Id.* (quoting *Raich*, 545 U.S. at 22). As a result, Powers' as-applied challenge fails because his consumption of child pornography alone is enough to establish federal jurisdiction, regardless of the contended intrastate character of his activities. *Compare United States v. Corp*, 236 F.3d 325 (6th Cir. 2001) (pre-*Raich* decision finding § 2252(a)(4)(B) unconstitutional as applied where the sole basis for federal jurisdiction was the fact that the photos were developed on paper made in Germany), *with Chambers*,

5

441 F.3d at 451-55 (post-*Raich* decision finding § 2252(a)(4)(B) constitutional as applied where the only evidence offered at trial of an interstate connection was the defendant's use of Polaroid film made in either Massachusetts or the Netherlands to develop the images), *and United States v. Bowers*, --- F.3d ---, 2010 WL 424911, at *6 (6th Cir. Feb. 8, 2010) ("[W]e take this opportunity to make clear that, after *Raich*, this court's decision in *Corp* is no longer good law.").

**B.      Impeachment of Ms. Elwood**

Powers contends that the district court improperly limited examination of Ms. Elwood in violation of his right to confront his accusers. During cross-examination, Powers' counsel attempted to question Ms. Elwood about her marijuana use. The Government objected to this line of questioning, and the judge sustained the objection. The judge dismissed the jury, and a voir dire was conducted on this issue. Ms. Elwood admitted that she had smoked marijuana since she was 16, and that she had smoked marijuana with Powers between five and ten times while her children were home. Furthermore, in response to a question related to her ability to recall events, she stated, "I have no problem with remembering things."

Evidentiary rulings, even constitutional challenges to those rulings, are considered under the abuse of discretion standard. *United States v. Davis*, 577 F.3d 660, 666 (6th Cir. 2009) (quoting *United States v. Schreane*, 331 F.3d 548, 564 (6th Cir. 2003)). The Supreme Court has remarked that "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). *See also Boggs v. Collins*, 226 F.3d 728, 736 (6th Cir. 2000). A Confrontation Clause issue only emerges when the

limitations have "emasculate[d] the right of cross-examination itself." *Hargrave v. McKee*, 248 F. App'x 718, 726 (6th Cir. 2007) (quoting *Delaware v. Fensterer*, 474 U.S. 15, 19 (1985)).[2]

In this case, the judge properly exercised his discretionary powers in refusing to allow the questions on drug use. Drug use may be used to attack a witness's "ability to perceive the underlying events and testify lucidly at trial." *United States v. Martinez*, 59 F. App'x 638, 646 (6th Cir. 2003). But, "a district court may refuse cross-examination on the issue where memory or mental capacity is not legitimately at issue and the evidence is offered solely as a general character attack." *United States v. Mojica*, 185 F.3d 780, 789 (7th Cir. 1999). *See also United States v. Holden*, 557 F.3d 698, 703 (6th Cir. 2009) (finding that the district court properly limited impeachment of a witness about past drug treatment that was a general attack on the witness's credibility). The main thrust of Ms. Elwood's testimony was that Powers often used the family computer during the two months that he lived in her home. The use of marijuana five or ten times would not have influenced her ability to perceive how often Powers used the computer. Thus, her ability to testify lucidly at trial was not legitimately at issue, and the judge appropriately ruled that the prejudicial impact of the drug use outweighed its probative value.

## C.     The Proposed Jury Instruction on Venue

Powers argues that the district court erred when it declined to give a jury instruction on venue with regard to Count I of the indictment—related to the creation of the Yahoo group that contained child pornographic images. This court reviews a jury charge "as a whole to determine whether the charge fairly and adequately submit[ted] the issues and law to the jury." *United States v. Heath*, 525

---

[2] This court has also said that "[t]he applicable standard of review for an evidentiary ruling of the district court where the evidentiary issues relate to a claimed violation of the Sixth Amendment is the de novo standard." *United States v. Robinson*, 389 F.3d 582, 591-92 (6th Cir.2004).

F.3d 451, 455-56 (6th Cir. 2008) (citing *United States v. Buckley*, 934 F.2d 84, 87 (6th Cir. 1991)). "A trial court's refusal to give a requested jury instruction is reversible error only if the instruction is 1) correct, 2) not substantially covered by the actual jury charge, and 3) so important that failure to give it substantially impairs defendant's defense." *United States v. Sassak*, 881 F.2d 276, 279 (6th Cir. 1989) (citing *United States v. Parrish*, 736 F.2d 152, 156 (5th Cir. 1984)). This court reverses a district court's decision "only if the instructions, viewed as a whole, were confusing, misleading and prejudicial." *Heath*, 525 F.3d at 456 (quoting *United States v. Clark*, 988 F.2d 1459, 1468 (6th Cir. 1993)).

The Government had to prove venue by a preponderance of the evidence. *United States v. Cooper*, 40 F. App'x 39, 40 (6th Cir. 2002) (citing *United States v. Crozier*, 259 F.3d 503, 519 (6th Cir. 2001)). The district court did not err in refusing to give a venue instruction before submitting the issue to the jury because the "record clearly reflects that the [G]overnment had established venue, despite the trial court's failure to instruct the jury . . . ." *Id.* Specifically, Powers did not dispute evidence and testimony related to the IP address that established that the "luvbeauty03" group was created, and the pictures uploaded and viewed, from the Elwoods' home—located in the Western District of Tennessee. *See Crozier*, 259 F.3d at 519 ("Venue is proper in the state or district where the offense was committed."). Because venue was clearly established, a venue instruction could not have been important enough to substantially impair Powers' defense.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.